UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00116-JRS-MJD |
| | ) | |
| PIERRE RILEY, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**Order on Motion for Order of Forfeiture and Preliminary Order of Forfeiture of Specific Assets**

Before the Court is the United States' Motion for Order of Forfeiture and Preliminary Order of Forfeiture of Specific Assets ("Motion"). (ECF 1284.) On October 15, 2019, Defendant Pierre Riley pleaded guilty to Counts One, Six, and Nineteen of the Fifth Superseding Indictment, and the Court adjudged him guilty. (ECF No. 971.) On November 6, 2020, after the Court sentenced Riley to 490 months' imprisonment, it withheld ruling on the United States' Motion pending further briefing. (ECF No. 1484.) For the following reasons, the United States' motion is granted in part.

### I. Background

Riley had approximately $12,000 in his possession when he was arrested on May 1, 2018, in Macon, Georgia. (5th Superseding Indictment ¶ 30, ECF No. 694.) On August 14, 2019, a Fifth Superseding Indictment ("Indictment") charged Riley with conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846 ("Count One"); conspiracy to use interstate commerce in the commission of murder-for-hire, in violation 18 U.S.C. § 1958

1

("Count Six"); and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) ("Count Nineteen"). (*Id.*)

The Indictment notified Riley of the United States' intent to pursue forfeiture, under 21 U.S.C. § 853, if Riley was convicted of Count One, of "any and all property constituting or derived from any proceeds [Riley] obtained directly or indirectly as a result of the offenses, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses." (*Id.* at 24.) The Indictment also notified Riley, if he was convicted of Count Six, that he shall forfeit, pursuant to 18 U.S.C. § 981(a)(1)(C), "any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" 18 U.S.C. § 1958. (*Id.* at 25.) And, the Indictment notified Riley that the United States was entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p). (*Id.* at 24.)

On October 15, 2019, Riley pleaded guilty to Counts One, Six, and Nineteen of the Fifth Superseding Indictment, and the Court adjudged him guilty. (ECF No. 971.) In pleading guilty, Riley admitted that he obtained kilogram quantities of methamphetamine in Georgia, which he then distributed by couriers, who were directed to pick up the methamphetamine (and, on occasion, cocaine) in Georgia, and bring those controlled substances to Kokomo, Indiana. (ECF No. 963 at 3.) Upon arriving in Kokomo, the controlled substances were distributed and sold by other co-defendants. (*Id.*) He further admitted that this drug-distribution activity generated drug proceeds in Kokomo, Indiana, from mid-2016 through May 1, 2018, and that he concealed

2

and disguised the nature, source, ownership, and control of the drug proceeds, through various means. (*Id.*)

## II. Legal Standard

"Any person convicted of a violation of [conspiracy to distribute and to distribute a controlled substance] shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation . . . ." 21 U.S.C. § 853(a)(1). Similarly, a person convicted of conspiracy to launder monetary instruments, must "forfeit to the United States any property, real or personal, involved in such offense, or any real property traceable to such property." 18 U.S.C. § 982(a)(1).

The Federal Rules of Criminal Procedure govern the forfeiture of property based on a defendant's conviction for an offense giving rise to forfeiture. Rule 32.2 requires the Court to determine what property is subject to forfeiture under the applicable statute as soon as practical after a plea of guilty is accepted. Fed. R. Crim. P. 32.2(b)(1)(A). The Court must determine "whether the government has established the requisite nexus between the property and the offense" when specific property is sought; or, "the amount of money that the defendant will be ordered to pay" in the event a personal money judgment is sought. *Id.* "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also United States v. Grayson Enters., Inc.*, 950 F.3d 386, 409 (7th Cir. 2020).

### III. Discussion

The United States moves for a money judgment in the amount of $125,000 and a preliminary order of forfeiture for $12,200 (Asset Identification Number: 18-DEA-641258) seized from the Defendant at his arrest. Defendant responds that the Government failed to sustain its burden that a forfeiture order of $125,000 is appropriate. The Court finds that the United States has met its burden in part.

The United States argues that it seeks a money judgment against Riley because it could not locate all the specific property constituting proceeds of Riley's drug dealing conspiracy. The United States is authorized to seek such judgment. *See* Fed. R. Crim. P. 32.2(b)(1)(A); *see also United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000). Riley's response is twofold.

*A. Did the Government Provide Notice of its Intent to Seek Forfeiture?*

First, Riley argues that his money laundering conviction is an improper basis for forfeiture because the Indictment does not provide notice, as required, that forfeiture will be sought as to Count 19, *see* Fed. R. Crim. P. 32.2(a) ("A court must not enter a judgment of forfeiture . . . unless the indictment . . . contains notices to the defendant."). Therefore, the United States' argument for forfeiture is improper, Riley argues, because it is based entirely on the convictions for conspiracy to distribute narcotics and money laundering. The United States concedes that the Indictment does not reference the applicable statute for forfeiture as it relates to Riley's conviction on Count 19, (*see* ECF No. 1496 at 1); however, the United States argues that Riley's

argument is irrelevant because it is seeking a forfeiture money judgment and forfeiture of the specific asset of proceeds resulting from Riley's convictions, all of which related to his drug conspiracy and trafficking, (*see id*).

Riley was provided notice of the United States' intent to seek forfeiture even though the applicable statute for conspiracy to launder monetary instruments, *see* 18 U.S.C. § 982(a)(1), was not included in the Indictment. This is so because "[t]he 'essential purpose' of notice is to inform the defendant that the government seeks forfeiture so the defendant can marshal evidence in his defense." *United States v. Silvious*, 512 F.3d 364, 370 (7th Cir. 2008) (citing *United States v. Diaz,* 190 F.3d 1247, 1257 (11th Cir.1999)). In *Silvious*, the defendant argued that the government did not provide him notice of its intent to seek forfeiture because the indictment did not list the correct, applicable statute. *Id.* The Seventh Circuit held that listing the wrong forfeiture statute did not prevent the defendant from receiving notice under Rule 32.2, because the indictment informed him that the government intended to seek forfeiture, and it identified targeted assets. *Id.*

Here, as in *Silvious*, the United States did not provide the applicable statute, but, nevertheless, the Indictment provided Riley with notice of the United States' intent to seek forfeiture. Specifically, the United States provided notice of its intent to seek forfeiture if Riley sustained a conviction for Count One, and it included the applicable statute. Also, the forfeiture personal money judgment and forfeiture of the specific asset the United States seeks derives from proceeds resulting from Riley's conviction of Count One.

*B. Did the Government Meet Its Required Burden?*

Second, Riley argues that the United States did not meet its burden that a forfeiture order of $125,000 is appropriate. Specifically, Riley takes issue with the evidence the United States relies on in its forfeiture request.

The United States bears the burden of proving its entitlement to forfeiture by a preponderance of the evidence. *See United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005). Because forfeiture is considered part of the sentencing process, the Federal Rules of Evidence do not apply; meaning, hearsay may be considered as long as the information "has a sufficient indicia of reliability to support its probable accuracy." *United States v. Rollins*, 544 F.3d 829, 838 (7th Cir. 2008). Indeed, it is established law that the use of hearsay as reliable evidence substantiating forfeiture is permitted. *See, e.g.*, *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (stating that, because forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; the evidence need only be "reliable"). Moreover, courts have held that the government can rely on a law enforcement agent's reliable hearsay for its forfeiture request. *See, e.g.*, *United States v. Stathakis*, No. 04-CR-790, 2008 WL 413782, at *14 n.2 (E.D.N.Y. Feb. 13, 2008).

The United States offers the declaration of Erik Collins, Special Agent with the Drug Enforcement Administration to support forfeiture. (Collins Decl., Ex. A, ECF No. 1284-1.) In his declaration, Collins states that Riley obtained at least $130,500

6

in proceeds from his participation in the conspiracy to possess with intent to distribute and to distribute controlled substances. The United States, however, seeks $125,000. Collins explains his calculation:

> Adding the $25,000 in drug proceeds . . . with the $97,500.00 from the methamphetamine sales in Kokomo through [his co-defendant] as well as the $8,000.00 from the seizure in April 2018, the total for Riley's proceeds from his drug and money laundering conspiracy totaled at least $130,500.00. All of the above amounts were traceable to Riley as proceeds of the conspiracy charged in Count One of the Fifth Superseding Indictment.

(*Id.* ¶¶ 13–14.) Riley, however, argues that Collins's calculation is flawed.

### 1. $97,500 From Methamphetamine Sales

Riley argues that the $97,500 should be halved, because Collins's calculation relies on the statements to investigators by one of Riley's co-defendants, Kristin Kinney, whom Riley states offered contradictory testimony at trial and is therefore unreliable. Riley points to paragraph eight of Collins's declaration, which states that Kinney "told investigators that from the fall of 2017 to May 1, 2018, she picked up two to three packages of controlled substances from couriers on at least six occasions." (*Id.* ¶ 8.) Riley highlights that Kinney testified under oath that she picked up Riley for the first time in the fall of 2017, (Kinney Test. 9:7–9:10, ECF No. 1293), and that she did not know drugs were involved, (*id.* at 16:16–16:18). Additionally, Kinney further testified that after she first picked up Riley in the fall of 2017, she picked someone up from a Megabus stop "every couple of months," (*id.* 9:22–9:24). Riley argues that Kinney's trial testimony contradicts the hearsay statements from Kinney that Collins

relies on to make his calculation and, therefore, the calculation Collins makes in paragraphs nine to eleven in his declaration, that "Riley yielded a profit of $97,500.00 on 12 kilograms of methamphetamine," (Collins Decl. ¶ 11), should be halved to no more than $48,750. So, while Riley does not contest the validity of the calculation methodology, which methodology the Court finds reasonable, he does question the amount of methamphetamine used in making the calculation.

But, the totality of Kinney's testimony, which the Court found credible, does not contradict the out-of-court statements upon which Collins relies. For instance, on cross examination, Kinney clarified that she made "six or seven" trips to the Megabus stop, (Kinney Test. 17:21–17:23), and Collins states that "she picked up two to three packages of controlled substances from couriers on at least six occasions," (Collins Decl. ¶ 9). At Riley's sentencing hearing, the Court recalls Collins testifying that Kinney was observed traveling to the Megabus stop on three occasions. Again, this testimony does not necessarily contradict the testimony which Collins relies on in his declaration—that Kinney went to the Megabus stop every couple of months beginning in the fall 2017 and continuing through May 1, 2018. Moreover, that Kinney did not know drugs were involved is immaterial, because "[t]he investigation determined that each package contained one kilogram of methamphetamine." (*Id.*) As to this part of the calculation, the Court finds that the hearsay Collins relies on "has a sufficient indicia of reliability to support its probable accuracy." *Rollins*, 544 F.3d at 838. Fur-

thermore, the calculations are also based on other evidence adduced at trial, for example wire intercepts, and the expert opinion of Collins. So, this amount has been proven by at least a preponderance of the evidence.

2. $8,000 worth of drugs seized in April of 2018

Riley next argues that the value—$8,000—of the drugs seized in April of 2018 should be subtracted from the total amount of proceeds, because including the $8,000 is impermissible double counting. Riley also contends that the $8,000 should not be included in the calculation of his gain because he never received the $8,000. This second contention is well-taken and obviates the need for the Court to consider the first. Collins stated that "[d]uring the investigation[,] wire intercepts revealed that 1 kilogram of Riley's methamphetamine was seized . . . that did not involve Kinney. Riley would have realized a profit of $8,000 on this kilogram of methamphetamine had this kilogram not been seized by law enforcement." (Collins Decl. ¶ 12.) Riley, however, points out that because forfeiture is "gain based," what Riley "would have gained" from the sale of the seized kilogram is immaterial. *United States v. Swanson*, 394 F.3d 520, 528–29 (7th Cir. 2005). The United States responds that forfeiture need not be gain based. (ECF No. 1496 at 2) (citing *United States v. Casey*, 444 F.3d 1071, 1074–76 (9th Cir. 2006)). The Court agrees with Riley, because his argument is backed by Seventh Circuit precedent.

The Seventh Circuit has opined that "a district court must focus on a defendant's gains for purposes of calculating forfeiture." *Swanson*, 394 F.3d at 529 (citing *United States v. Genova*, 333 F.3d 750, 761 (7th Cir. 2003)). This is because "forfeiture is

based on the offender's gain." *United States v. Webber*, 536 F.3d 584, 603 (7th Cir. 2008); *see also United States v. Burns*, 843 F.3d 679, 690 (7th Cir. 2016) ("Forfeiture is based on the theory that a defendant should not profit from his illegal activity, and thus, forfeiture orders reflect the defendant's gain . . . .") (citing *Webber*, 536 F.3d at 603). Because the kilogram of methamphetamine in question was seized, Riley did not gain a profit of $8,000 from it. The United States has not met its burden of proving its entitlement to the $8,000 by a preponderance of the evidence. *See Tedder*, 403 F.3d at 841. Therefore, $8,000 should be subtracted from Riley's $130,500 in proceeds. (*See* Collins Decl. ¶ 13.)

### 3. $25,000 in Drug Proceeds

Riley takes issue with the United States' calculation of the $25,000 in drug proceeds. First, Riley points to paragraph four of Collins's declaration, which asserts that "Kinney . . . stated that for about a year, she picked up approximately $25,000 from two of Riley's drug associates." (Collins Decl. ¶ 4.) Riley argues that Collins's reliance on Kinney's out-of-court statement is contradicted by her testimony under oath, that she "picked up cash from O'Bannon only a couple of times and it was maybe only a couple thousand dollars," and further because Collins does not identify the second drug associate. (ECF No. 1489 at 3.) Riley, however, is mistaken. Again, Kinney's testimony does not necessarily contradict her out-of-court statements to Collins. For example, Kinney testified that she "picked up money from Mr. O'Bannon a couple of times," (Kinney Test. 14:6–14:7), and "pick[ed] up money from a gentleman

by the name of Rejaunte Coleman," (*id.* at 14:20–14:22)—all "on behalf of Pierre Riley," (*id.* at 14:15–14:16).

Moreover, Kinney testified that she picked up, at most four times, "a couple thousand dollars each time," (*id.* at 15:4–15:5), from O'Bannon. But Kinney did not testify as to how many times she picked up money from Coleman, or as to how much money she picked up from him each time. Therefore, contrary to Riley's assertion, Kinney's testimony does not contradict her statement to Collins. This is so because Kinney's testimony and her out-of-court statements to Collins can both be accurate. Furthermore, Collins's calculation of the $25,000 is not unreliable just because Kinney did not testify as to the specific amounts of money she received from the second associate or because Collins did not specify the identity of the second associate. Collins, as the lead investigator in this case, is intimately familiar with the facts of this case—not to mention he sat through the entire trial and testified at trial and during Riley's sentencing hearing.

Additionally, Riley's reliance on Kinney's trial testimony is shortsighted, because Kinney testified at Riley's co-defendants' trial—not Riley's. That is, Kinney's testimony did not necessarily encompass the full extent of her interactions with Riley. And why should it have? Riley was not on trial. Riley also omits from his argument that fact that Riley and Kinney were in a romantic relationship. The Court recalls that Kinney gained nothing from these different interactions. Indeed, she testified that she involved herself in the transactions because she loved Riley. Therefore, as to this part of the calculation, the Court also finds that the hearsay Collins relies on

11

"has a sufficient indicia of reliability to support its probable accuracy." *Rollins*, 544 F.3d at 838.

Indeed, many of the points Riley raised, here, were previously addressed during his sentencing hearing by his objection to paragraphs sixteen through forty-two of his Presentence Investigation Report ("PSR"), which were, then, overruled by the Court. Specifically, the Court found by a preponderance of the evidence that the objected to facts were established because there appeared to be no inconsistencies between the factual matters in the PSR and the amended factual basis to which Riley pleaded guilty. Here, the Court stands by its previous ruling.

Riley also argues that there is no evidence to prove that the $25,000 collected from Riley's two associates was a gain to Riley. The Court disagrees. According to the PSR, Riley reported being self-employed from 2015 until his arrest. (*See* PSR ¶ 116, ECF No. 1446.) Although Riley reported being the partial owner of an automotive business in Georgia, Georgia's Corporate Divisions website did not list Riley as an owner of the business. (*Id.*) Regardless, Riley only reported a monthly income of $2,400 "when he was working." (*Id.*) The Court finds that the $25,000 was indeed a gain to Riley, because it appears that he had no legitimate income during the entirety of the drug conspiracy. *See Burns*, 843 F.3d at 690.

C. *Preliminary Order of Forfeiture*

Finally, the United States seeks a preliminary order of forfeiture for $12,200 (Asset Identification Number: 18-DEA-641258) seized from the Defendant at his arrest. "There is a rebuttable presumption . . . that any property of a person convicted

12

of [a drug trafficking conspiracy] . . . is subject to forfeiture . . . if the United States establishes by a preponderance of the evidence that (1) such property was acquired by such person during the period of the violation . . . or within a reasonable time after such period; and (2) there was no likely source for such property other than the violation. . . ." 18 U.S.C. § 853(d). Riley admitted to his part in the drug dealing and money laundering conspiracies, (ECF No. 963), and has failed to rebut the presumption that the $12,200 recovered during the conspiracy is subject to forfeiture. Rather, Riley did not contest the United States' request for forfeiture of the $12,200, (*see* ECF No. 1489), thereby waiving any objection to the request. *See, e.g., United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotations and citations omitted)); *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 511 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and make Connor's case for him.").

In any event, the record clearly establishes by a preponderance that the cash was on his person, i.e., acquired, during the relevant period, and, as detailed in the presentence investigation report, without objection, that Riley had no other legitimate source of income to account for the $12,200 in cash he was carrying when arrested. (ECF No. 1446). The Court, therefore, finds that the United States has established by a preponderance of the evidence that the $12,200 seized at Riley's arrest in April of 2018 is proceeds of the drug trafficking conspiracy to which Riley pleaded guilty.

## IV. Conclusion

For the above reasons, the United States' motion, (ECF No. 1284), is **granted in part.** The $8,000 representing the value of the seized drugs will be subtracted from the total amount of proceeds Riley gained as a result of the drug conspiracy. A Judgment and Preliminary Order of Forfeiture will be issued accordingly.

**SO ORDERED.**

Date: 12/18/2020

*[signature]*

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
michelle.brady@usdoj.gov

Thomas A. Brodnik
MCNEELY LAW LLP (Indianapolis)
TBrodnik@McNeelyLaw.com

Cindy Jane Cho
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
cindy.cho@usdoj.gov

Jeremy A. Morris
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeremy.morris@usdoj.gov

UNITED STATES PROBATION OFFICE